# OFFICE OF THE FEDERAL PUBLIC DEFENDER
# DISTRICT OF MARYLAND
NORTHERN DIVISION
TOWER II, 9th FLOOR
100 SOUTH CHARLES STREET
BALTIMORE, MARYLAND  21201-2705
TEL:  (410) 962-3962
FAX:  (410) 962-3976
TOLL FREE: (855) 213-8450

JAMES WYDA  
FEDERAL PUBLIC DEFENDER

CYNTHIA FREZZO  
ASSISTANT FEDERAL PUBLIC DEFENDER

July 5, 2023

<u>Filed via ECF</u>

The Hon. Ellen L. Hollander  
United States District Judge  
101 West Lombard Street  
Baltimore, MD 21201

Re: *United States v. Brandon*, No. 1:22-cr-239-ELH

Dear Judge Hollander:

I write to alert the Court to the recent opinion in *United States v. Ahmarrae Brooks*, No. CR TDC-22-0428, 2023 WL 4157341 (D. Md. June 23, 2023).  Judge Chuang's ruling in *Brooks* supports Mr. Brandon's argument that Officer Stewart violated the Fourth Amendment when he stopped Mr. Brandon's car based on a supposed window-tint violation. *See* ECF 28 at 4-9; ECF 43 at 4-20.

In *Brooks*, police were patrolling a so-called "high crime area" at night when they observed a car parked in an apartment complex's parking lot "with the front of the vehicle facing out."  2023 WL 4157341, at *1.  Officers saw "that the side windows and windshield of the vehicle were very darkly tinted, and that the vehicle did not have a front license plate." *Id.*  When one of the officers shone his flashlight into the car's front windshield, he "observed Brooks 'moving around a lot' in his seat," with his "right shoulder 'going down' as if he was 'reaching towards the floorboard.'" *Id.* at *2.  The officer interpreted these "furtive movements" as "an attempt to 'retrieve or conceal something.'" *Id.* at *2-3.  Officers ordered Brooks out of the car, conducted a search, and recovered drugs and guns. *Id.* at *2.

Brooks moved to suppress all evidence found in his car. In response, the government argued that the police officers had reasonable suspicion to stop Mr. Brooks's car based on the tinted windows and his "furtive movements in a high crime area." *Id.* at *3.

Judge Chuang noted, as the government concedes in Mr. Brandon's case, that the Maryland Transportation Code's window-tinting requirements "apply only to vehicles registered in the state of Maryland." *Id.* at *5. He therefore concluded Brooks's case was governed by the Fourth Circuit's binding, published opinion in *United States v. Frank Johnson*, 256 F.3d 214 (4th Cir. 2001). *Id.* at *7. Under *Frank Johnson*, Judge Chuang wrote, "a law enforcement officer must have reasonable suspicion to believe that a vehicle is required to be registered in Maryland in order to have reasonable suspicion to stop that vehicle for a violation of the Maryland window tint law." *Id.* But in *Brooks*, "the officers had no reason to believe that Brooks's vehicle was registered in Maryland or required to be registered in Maryland." *Id.* Indeed, because Maryland requires cars registered in the state to carry both front and rear license plates, the "most straightforward explanation" for the fact that Brooks's car lacked a front plate was "that it was an out-of-state vehicle." *Id.* Accordingly, *Frank Johnson* made clear that the stop of Brooks's car violated the Fourth Amendment. *Id.*

The government argued in *Brooks*, as it does here, that the car stop was legal under the Maryland Court of Special Appeals' decision in *Baez v. State*, 192 A.3d 945 (Md. Ct. Spec. App. 2018). *Id.* at *8. But as Judge Chuang explained, *Baez* "conflict[s with] and contradict[s]" *Frank Johnson*; it "is not reconcilable with *Johnson*'s holding." *Id.* The government in *Brooks* attempted to distinguish *Baez* on several grounds, but Judge Chuang easily concluded "none are meaningful." *Id.* And because district courts are "bound by Fourth Circuit precedent," he "applie[d] the holding of *Johnson*, a published, on-point opinion issued by the Fourth Circuit," rather than *Baez*. *Id.* Judge Chuang therefore declined to follow *United States v. Devonta Johnson*, No. PWG-21-0171, 2021 WL 5882570 (D. Md. Dec. 13, 2021), which held *Baez* trumped the Fourth Circuit's binding precedent in *Frank Johnson*. *Id.*

The government also argued in *Brooks*, as it does here, that even if *Frank Johnson* controlled, *Baez* permitted police officers to invoke the good-faith exception to the exclusionary rule, as articulated in *Davis v. United States*, 564 U.S. 229 (2011). *Id.* at *9. Judge Chuang rejected this argument. As he explained, "the relevant holding of *Baez* conflicts with the Fourth Circuit's holding in *Johnson*," and the "Fourth Circuit has generally applied the *Davis* good faith exception based on binding appellate precedent only where

there is an 'established and uniform body of precedent' permitting the action in question." *Id.* (quoting *United States v. Aigbekaen*, 943 F.3d 713, 725 (4th Cir. 2019)). Judge Chuang wrote that he was "unaware of a circumstance in which the *Davis* good faith exception was applied when the binding appellate precedent was not uniform and instead was conflicting and contradictory." *Id.* at *10. Accordingly, "where *Baez* conflicts with the Fourth Circuit's holding in *Johnson*," the "*Davis* good faith exception does not apply." *Id.*

Finally, Judge Chuang held Brooks's supposed "furtive movements" could not save the legality of the stop. Although "[t]he fact that an investigatory stop 'took place at night in a high-crime area is a relevant factor in the totality of the circumstances analysis,' . . . it is 'not itself sufficient' to establish reasonable suspicion." *Id.* at *3 (quoting *United States v. Cloud*, 994 F.3d 233, 248 (4th Cir. 2021)). Brooks's reaching movements, Judge Chuang concluded, were "not sufficiently incriminating to meet the standard of reasonable suspicion" that the Fourth Circuit had articulated in factually similar cases, such as *United States v. Foster*, 634 F.3d 243 (4th Cir. 2011), and *United States v. Sprinkle*, 106 F.3d 614 (4th Cir. 1997). *Id.* at *4. And even considered "in combination" with the window tint, Brooks's "alleged furtive movements" did not establish reasonable suspicion. *Id.* at *9. After all, the "furtive movements provide[d] no basis to increase the likelihood" that Brooks's car was registered in Maryland, and thus no basis to increase the likelihood that "the license plate and window tinting issues amounted to a traffic violation." *Id.*

If suppression was required in *Brooks*, it is necessarily required in Mr. Brandon's case as well. Unlike in *Brooks*, where police officers did not observe license plates from any state before making a car stop, here officers stopped Mr. Brandon's car even though they saw that it was bearing Pennsylvania plates. The evidence that Mr. Brandon's car was *not* subject to Maryland's tinting requirements is therefore even stronger here than in *Brooks*. Further, the government alleges Mr. Brandon was stopped in a "high-crime area," but it does not allege that the stop occurred at night or that Mr. Brandon was making "furtive movements," as in *Brooks*. *See* ECF 32 at 9. The "high-crime" nature of the area in which the stop occurred is therefore even less relevant than in *Brooks*.

    The Court should grant Mr. Brandon's motion to suppress.

        Respectfully submitted,

        <u>/s/ Cynthia Frezzo</u>
        Cynthia Frezzo
        Assistant Federal Public Defender